Good afternoon, Your Honor. Good afternoon. It never ceases to amaze me how you're able to change gears like this, one case after another. My name is Nora Marino. I represent the plaintiff and appellant in this case. Your Honors, this case rests on the issue of probable cause, as I'm sure you're aware. And it's one thing to claim that probable cause exists, and it's another to claim that probable cause as a matter of law exists. And it's opposition that the loan court erred completely. But why, with all the mistakes the state made, with all the business of Parker and Schmarker and whatever, doesn't the fact that Jimenez identified your client in a video, which we've looked at and is not very clear, but is not worse than many, sufficient for probable cause under all of our cases? And that nothing happened after the arrest, before the trial, that changed that? Jimenez's identification was based on clothing, Your Honor. Even though Jimenez said, I recognize that person as Diego Heredia, when asked how, his answer was, because I've seen him wear that type of jacket and those types of shoes a year ago. Not even on the day of the crime. Wasn't it more than that? His mannerisms? His mannerisms and gait. His gait, his mannerisms. If I work with someone for three years, as Mr. Jimenez had, and someone who's my boss, I might be able to recognize them in a video if I know their walk, the way they carry themselves. So it wasn't just clothing. And further, as part of the description of his physical movement, was his facility with knowing where the keys went, where the code went. He was clearly very familiar with the door and how to get in without triggering the alarm. And so I don't think it's fair to say it was just his clothes. OK, let me address all those things. Yes, I think it's a package. I think it's a package. OK, but I'm going to start with what you brought up, having been a prior employee does not rise to the level of creating circumstantial evidence. If we're going to meet that bar, we're going to have a huge. Counsel, we're not asking whether this would lead to an acquittal. Your client was, in fact, acquitted because the jury didn't feel it was strong enough. The question is a different one, whether the police, under most circumstances, have enough cause to bring the first step. Actually, Your Honor, if I may, the question is really, did the lower court have the right to grant summary judgment and not let that question of whether or not the probable cause exists or not go to a jury? That's the question. We just want to get to a jury. We're not looking to win or lose here. We're saying that the lower court did not have the right to take it upon itself to make that determination that probable cause as a matter of law existed because of all these questions. You want to get to a jury on the question of a false arrest claim. And the case law is clear that a finding of probable cause operates as a complete bar to a false arrest claim, which is why we're asking you these questions. And when we're on this theory, the notion of circumstantial evidence, we were first talking about Jimenez's identification and whether that was sufficient. And you can address that. But you can't just look at Jimenez's identification alone. You have to look at the other circumstantial evidence the officer knew prior to getting the arrest. That includes contacting access to the building, not turning his keys in until two days later, and also contacting a former co-worker to inquire whether the business would be closing as was the customary practice for the holidays. Being a prior employee and having keys that nine months ago you turned in cannot constitute circumstantial evidence. Because if it does, then every time an employee leaves any job anywhere, then that can be construed as circumstantial evidence if a burglary occurs at any time in the future. But that is comforting given Jimenez's identification. And I might well agree with you that it would be very much better if we sent these probable cause cases to a jury. But I've been sitting here for 30 years and have seen any number of these cases where we said, sorry, where there is something of a sort, the cop had a right to do that. And I don't know why your case is different from those. Because if you have to look, and there's quite a few questions here I'm trying to answer. I want to address those text messages. There are no text messages in the record. The government only included an email that said a text message. I may have misspoke, but there was some. That's hearsay within hearsay. I thought there was a screen image. No, there wasn't. There wasn't. There's nothing in the record. We made the claim that there was, but there's nothing in the record. So that needs to be disregarded. With respect to the clothing identification, and I'm sorry, but I'm getting a lot of questions at one time. I'm trying to address all of them. With respect to Jimenez's shoes and jacket, we're talking about a jacket, a black jacket. No identifying logos. No identifying colors. No distinctive characteristics whatsoever. That someone saw him wear a minimum, someone saw Diego Heredia wear something similar to a minimum of nine months ago. That would be like me sitting in this courtroom and saying, I saw this attorney wear that same suit a year ago. He must have committed that crime that's on that video right now. With all due respect, it's an absurd connection. And Your Honor, I understand. I'm sure you've seen tons of these probable cause cases, and many of which perhaps warranted a dismissal on summary judgment by deeming that there was probable cause as a matter of law. But not this case with this video and this identification, which is so far-fetched, a black jacket and black sneakers. I saw this guy wear a black jacket and black sneakers nine months, not the same day as the burglary, not even the same week as the burglary. At least nine months earlier, I saw him wear a black jacket, no distinctive colors, no distinctive logos, no distinctive anything. And that's what this officer decided to base an arrest on, taking someone's liberty and freedom away? I think you're disaggregating the evidence that the officer had before him. As if it was just a black jacket that caused the arrest. But it wasn't, was it? The other, are you talking about having the keys or being a prior employee? I'm talking about Jimenez's identification of him on the video. I'm talking about the keys, the gate. The gate. These were, but it's not, it's not correct. To focus on each one individually as if they are not part of a picture that was drawn that was before the officer when he made the arrest. But even collectively, Your Honor, collectively, these things don't rise to probable cause as a matter of law. And if you look at Dufort, which was a Second Circuit decision, Dufort said an ID based on clothing is not sufficient to determine color. Color of clothing and a suggestive lineup, I think, in Dufort. Agreed, but the fact, and I believe that the lower court erred by disregarding Dufort because Dufort involved a lineup. Dufort involved an identification based on clothing. And that's the exact thing that happened here. And we would have a large discrepancy in the law if the holding is, okay, you can have a lineup, an ID based on a lineup, and a lineup based on clothing, but you can't have an ID from a video based on clothing. Like, you can't have that discrepancy. Either an ID based on clothing is insufficient or it's not, whether it's from a lineup or a video. And essentially, the idea of Jimenez was based on the clothing. The gate in Donegan's deposition, when the attorney said, well, what did that mean, mannerisms and gate? Donegan said, I don't know. They didn't even explore what does that mean. I understand what you're saying, Your Honor. If you work with someone, you know certain things. That video just shows a figure, clothed, head to toe, looking. What mannerisms? Counsel, you're quite a bit over time, but I do want to ask you about Appendix 224 and 225. I'm sorry, about what? About the screenshots that were sent to Detective Donegan. It's a message from Will Atkinson to Detective Donegan relating to the gallery burglary. And it's dated January 26, 2017. And it says, I'm resending the text messages between Jerome and Diego, where he asked about the closing of the gallery. And it forwards an original message. Now, you're correct. We don't have the actual screenshots. But let me, as per our phone conversation this afternoon, please find screenshots of the conversation between our former employee Diego asking our current employee, Jerome, when the gallery would be closed for the holidays. According to Jerome, they have not had any contact in approximately six months prior to these messages. Do not hesitate to contact if you have further questions. Will, now, my question is, are you saying this was fabricated by the employees or by the police, that this was not information Detective Donegan could not have relied on as circumstantial evidence? Honestly, Judge, without knowing the context, we don't see the text messages. Why were they omitted? Why are the text messages attached to that email? Maybe he wanted to have dinner with him. Maybe he wanted to inquire about getting his job back. We don't know what the context was of those text messages. If they were so damning, why aren't they part of the record? If they were part of this email and served as evidence to support probable cause, why aren't they there? They're not there. And what we have is a key... Thank you, I understand your argument on that. Thank you. Unless there are further questions, thank you. Counsel, you have reserved your time for rebuttal. Thank you. Good afternoon, now, Your Honors. May it please the Court, Philip Young here on behalf of the city. This court should affirm the district court's order granting summary judgment to the city on the false arrest and malicious prosecution claim here. I just want to quickly wrap up. I believe you received my email from yesterday, or my letter from yesterday. The city is not relying on the Parker identification. As Your Honors have noted, even absent that identification, there is ample probable cause here in the record. You have the Jimenez identification, which is clear and direct based on clothing, mannerisms, and walk. You have Acosta's statement that the person in the video is wearing the same clothing and sneakers as Heredia wore. You have all the circumstantial evidence that you've referenced here. Can you tell us why the text messages aren't in the record? Your Honor, I don't know why the text messages aren't in the record. I didn't personally compile the record below. But I think for purposes of the probable cause inquiry, the absence of those text messages doesn't matter. What matters is that the email shows that Detective Donagan had this information about the text messages before he made the arrest. And the probable cause determination is based on the totality of the information that the officer had before him when he made the arrest. And I just also on the text messages want to point out. But you must admit that in presenting this case to us, there has been a fair amount of sloppiness on your side. With respect to Parker before this, with respect to these. And that's too bad. It doesn't go to what we have to look at, whether there was enough. But I think you might do well. I don't mean that you did it, to speak back to your people and tell them, be more careful. Certainly, I hear that, Your Honor. As I noted in my letter, I reviewed that state court trial transcript, which was not part of the district court record and was not part of the record on appeal. And based on that review, decided not to rely on the Parker identification anymore. But the other point I just want to make on the text messages is that this was not an argument that was raised either in the district court or in appellant's opening brief here. And in fact, on page 43 of the record, which is the 56.1 statement, opposing counsel agreed with the city's facts as they presented them in the 56.1 statement about those text messages. Turning briefly to the most prosecution claim as well here, as Your Honors noted, the probable cause, the evidence of probable cause here was strengthened after the arrest. It did not dissipate in any way. When Heredia was arrested, he was wearing a black bubble jacket and black Puma sneakers, similar to the ones that the person in the video was wearing. And when the police then subsequently performed a search of Heredia's house, they found hard drives and they found a black jacket. All of that evidence only strengthened the probable cause determination. And then, of course, Heredia here never made any effort to seek to unseal the grand jury minutes. So there's simply no evidence in the record about what was presented to the grand jury. And all that we have is pure speculation about what was. And that goes to the issue of the appellants not presenting the grand jury minutes goes to the secondary claim of malicious prosecution, right? Because if there is an indictment, that bars a claim of malicious prosecution. It's one thing to prove someone guilty beyond a reasonable doubt. It's another to have probable cause to arrest someone. But getting to the issue of providing the grand jury minutes, and I understand your claim is, look, it's their burden to show, to overcome that step by producing those grand jury minutes to show that an indictment was not procured by fraud, misrepresentations, false statements. What about with regard to the actual district court transcripts that are attached as the district, the transcripts of the underlying trial itself? We get excerpts, but they seem to be cut off at sort of critical points. It's surprising to me that neither side chose to be a little bit more inclusive in their attachments to those. I just would add to the list of items of potential usefulness for us to keep that in mind when one side or the other submits transcripts that seem to be cut off. I appreciate your honor. At a certain arm. And then just very finally, with respect to Dufert, I want to emphasize that Dufert did not hold that identifications cannot be based on clothing. Dufert was limited to the lineup situation, and Dufert talked about how when a lineup is created in a situation where the witness has identified someone solely based on the color of their clothing, and then the police manufacture a lineup where only one person in that lineup is wearing that color, that's an unduly suggestive lineup. And any purported identification that comes out from that cannot be based, cannot support probable cause. That's not the situation here at all. And in any event, Jimenez's identification was based on more than clothing, as this court noted. Also his mannerisms and his gait. As we understand from common sense, if you work with someone for three to four years and you know them well, you can recognize someone by their mannerisms, clothing, and gait, even if you don't get a clear picture of their face. And then finally, in just the last couple of minutes, I just want to again note that we raised the probable, we raised qualified immunity below. There is a qualified immunity defense here in any event. At the very least, officers of reasonable competence or reasonable prudence could disagree about whether there's probable cause in this setting. And for that reason, that provides an independent basis to affirm, even though the district court didn't reach that below. Seeing no further questions, thank you, counsel. And for the record, you did not use almost three minutes and 40 seconds of your time. Thank you, Your Honors. Attorney Marina, you have three minutes for rebuttal. Thank you. A few things I want to address here. Counsel said that the text messages, like we can assume that the police officers relied on them. No, we can't assume anything. That's the point of a record. The record is what's before the lower court. And attorneys can choose what they put into the record and what they don't put into the record. Like I said, counsel, what if the officer didn't receive the screenshots, simply got a call from the manager? Let me finish my question. And the question and the information was, listen, in addition to the video, in addition to Jimenez and what we already gave you, I also heard from an employee that he received an inquiry by phone, let's say there are no text messages, that Mr. Heredia reached out to him to find out when the gallery was going to be closed for the holidays. Are you saying the officer could not rely on that information for probable cause? Yes, I am. I think the officer would have an obligation to reach out to that employee. Maybe Heredia wanted to bring his family to the gallery over Christmas holiday. Who knows what that could mean? The officer absolutely cannot rely on something so basic and so pedestrian without any facts or any context as probable cause. When's the gallery closed for the holidays? My nieces are in town. I want to take them to the gallery. When are they closing? Do you believe that the officer always has an obligation to investigate possibly exculpatory explanations for material and evaluating them? Not every time, Your Honor. But in this situation, absolutely. And why is that? Everything else was so flimsy. The video was terrible. The timeline was wrong. This officer was sloppy about the timeline. When he left, he said that Heredia left the employee in September. It was actually six months earlier. You turn in keys six months earlier? Did the officer even inquire were locks changed? Is there a code on the door? None of that's in the record. The officer didn't do any of that. Many of these businesses change their locks when employees leave. That's not even explored. This officer did such a lousy job of investigating this that, yes, I think he absolutely had a duty to look into what this text message allegedly meant. Like I said, maybe. Is that the law? Thank you. Thank you. The law is for purposes of this motion was probable cause established as a matter of law. We're not saying that you should. OK. You have said that, counsel. OK, so let me just try to hit another couple of things. You've got 20 seconds. Oh my god, really? Yes. All right, what counsel said about post-arrest, what they found in Mr. Heredia's home is irrelevant and should be disregarded. You have to have probable cause prior to arrest. And even that happens afterward is irrelevant and that should be disregarded. And with respect to malicious prosecution, it's not just in order to rebut the presumption for a grand jury indictment. You can also show, and I discussed this extensively in my reply brief in the last section, you have to show misrepresentations to the grand jury or the district attorney. We clearly have misrepresentation to the district attorney, which is proven by two sworn affidavits by Detective Donagan and Donagan's own admission at his deposition. So I think we've overcome that. And I know my time is up. And the only other thing I want to mention is this letter that we received at 4 o'clock yesterday, Your Honors. There's nothing in the record that shows that Parker ever made a positive ID. We have that. We agree that we would not look at Parker. OK, I just want to point out, because this letter came yesterday and really. And it's an admission. So it agrees with you and we agree with you, Counsel. Counsel, you have, again, just for the record, gone over time. And we understand that you've all submitted briefs and we have all your arguments. This concludes the cases for today. I thank both sides. We will take the matter under advisement. Having concluded.